IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL ANTHONY LEVERE, JR.,
    *Plaintiff*,

    v.
                    Civil Action No. ELH-21-1929

SIGNATURE PROPERTIES, LLC,
    *Defendant*.

**MEMORANDUM OPINION**

In this employment discrimination case, the self-represented plaintiff, Paul Anthony Levere, Jr., has sued his former employer, Signature Properties, LLC ("Signature"). ECF 1. Levere asserts violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Equal Pay Act, 29 U.S.C. § 206(d). *Id*. at 3. In particular, he appears to allege failure to promote, unequal terms and conditions, and unequal pay, on the basis of race and sex. *Id*. at 8. The Complaint is accompanied by the "Charge" that plaintiff filed with the Equal Employment Opportunity Commission ("EEOC"), as well as the EEOC's "Dismissal and Notice of Rights" (the "Right-to-Sue Notice") for plaintiff's claims. ECF 1-3.

Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF 13.[1] The motion is supported by a memorandum. ECF 13-1 (collectively, the "Motion"). Plaintiff opposes the Motion. ECF 18 (the "Opposition"). And, defendant has replied. ECF 19 (the "Reply").

---

[1] Signature did not timely respond to the Complaint. As a result, plaintiff moved for entry of default (ECF 5), which the Clerk granted. ECF 6. Approximately one month later, Signature moved to vacate the entry of default. ECF 8. The same day, plaintiff moved for default judgment. ECF 9. By Memorandum (ECF 10) and Order (ECF 11) of November 23, 2021, I vacated the entry of default and denied plaintiff's motion for default judgment. Thereafter, defendant filed the Motion. The next day, plaintiff filed a second motion for default judgment (ECF 15), presumably because he had not yet received the Motion. I denied that motion. ECF 17.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion, but with leave to file an Amended Complaint.

## I. Factual Background[2]

Plaintiff is a "black male." ECF 1 at 7. In May 2019, he began working at Signature as a "Portfolio Sales & Marketing Manager." *Id*. at 4. Although the Complaint is not explicit, context indicates that Signature is a property management company. *See id*. at 4, 7. As Portfolio Sales & Marketing Manager, plaintiff visited Signature properties; trained managers and staff; "implemented policies to increase traffic;" monitored promotions, invoices, and resident and employee relations; and organized the company picnic. *Id*. at 4.

During the hiring process, plaintiff was interviewed by two Signature employees, Nadia Norton and Tiffany McGowan, followed by an interview with another Signature employee, Erika Orlaskey. *Id*. at 4. The Complaint specifies that Norton was "Portfolio Operations Manager," but does not provide the job titles of McGowan or Orlaskey. *Id*. However, the attached Charge identifies Orlaskey as Vice President and McGowan as Director of Operations. ECF 1-3 at 1. During plaintiff's interview with Orlaskey, he was asked where he saw himself working at Signature. ECF 1 at 4. Plaintiff expressed an interest in operations, but recognized that Norton already filled an operations role. *Id*. He also expressed an interest in a "Regional Manager position," but Orlaskey responded that such a position "will never be made in the company as that

---

[2] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the Complaint. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). But, it is sometimes difficult to construct a coherent picture of the facts alleged in this case. And, as discussed in more detail below, plaintiff has made a number of factual assertions in his Opposition that are not included in the Complaint. However, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993). Therefore, in recounting the factual allegations, I confine myself solely to the Complaint.

will never be the structure she wanted as an organization." ECF 1 at 4. After this conversation, plaintiff accepted the Portfolio Sales & Marketing Manager position. *Id.*

Until "October 2020,"[3] Orlaskey was "little involved" in the day-to-day operations of Signature. *Id.* However, beginning in "October 2020," Orlaskey and plaintiff primarily worked to manage Signature's daily operations, because Norton was on maternity leave and McGowan was out for medical reasons. *Id.* Orlaskey noticed certain "deficiencies within the daily operations," and plaintiff suggested in response that Signature's properties should be divided into two portfolios, with him and Norton each acting as regional manager for one of the two portfolios. *Id.* However, "Orlaskey then reminded [plaintiff] that [Signature] would never structure that way and the regional position would not be available." *Id.*

In "November 2020," McGowan notified plaintiff that she and Orlaskey had spoken, and had decided to promote plaintiff to "Director of Marketing & Performance." *Id.* at 4. Plaintiff was informed that his salary would initially increase from $55,000 per year to $65,000 per year, until February, when Signature was to "acquire[] South Pointe."[4] *Id.* At that point, he was to receive an additional increase. *Id.* at 4-5. Plaintiff was never told a specific amount for the salary increase, as it was still being negotiated with Orlaskey, but he alleges that he was told by McGowan that "the average salary for a Director was over $100k per year."

---

[3] The years mentioned in the Complaint are somewhat confusing, and perhaps incorrect, which makes it more difficult to evaluate the claims. Plaintiff alleges that he was hired in May 2019 (ECF 1 at 4) and terminated in August 2020. *Id.* at 7. He filed the Charge in January or April 2021, as discussed, *infra. See id.* at 9; ECF 1-3 at 1. However, the Complaint also refers to events in "October 2020" and "November 2020," *i.e.*, after plaintiff's termination. ECF 1 at 4. Plaintiff may have intended to refer to October and November of 2019, not 2020, especially given that the Complaint describes subsequent events, recounted *infra*, which are referred to as occurring in February through August 2020. *Id.* at 5-7; ECF 18 at 3.

[4] No further information is provided as to this apparent acquisition. The year for "February" is not provided, but the Complaint appears to mean February of 2020.

The next February, *i.e.*, February of 2020, McGowan was terminated.  ECF 1 at 5.  Later that month, it was "announced" that a new employee, Teresa Weyant, had "accepted" a position as "Regional Manager," and she would begin work in March.  *Id*.  Plaintiff describes himself as "shocked and stunned" that neither he nor Norton was even considered for the Regional Manager position, given his inquiries and his work performance.  *Id*.  Weyant subsequently began working at Signature "the week of March 11, 2020."  *Id*.[5]

The Complaint then appears to allege, in essence, a systematic reassignment of plaintiff's responsibilities away from him.  *Id*.  For example, after starting, Weyant sent an email to Signature employees indicating that she would now handle "whatever the properties would normally reach out to [plaintiff] for."  *Id*.  At around the same time, Signature also hired a new "corporate administrator," Brianna Stumpf, who took over "resident relations" from plaintiff.  *Id*.  And, in April 2020, Orlaskey advised plaintiff that another individual, whose identity plaintiff never learned, would take over "managing the systems," another apparent task of plaintiff for which he provides little detail.  *Id*.

In May 2020, plaintiff completed and submitted a presentation to Signature's "owner," Mike Katz, at Katz's request.  *Id*.  Katz responded by asking plaintiff and Orlaskey to send him photographs of all Signature employees in color, which would apparently be included in the presentation.  *Id*.  Orlaskey indicated to plaintiff that she would revise all employee biographies, as they would be included in the presentation, and that plaintiff should send over all biographies and photographs he was receiving from employees to her so she could revise the presentation.  *Id*.  According to plaintiff, despite "numerous attempts to get this information," he never "received anything back to complete the presentation."  *Id*.

---

[5] *See supra* note 3 regarding the Complaint's inconsistency as to dates.

"Around June 1, 2020," Orlaskey called plaintiff and asked him "what position" he thought would "suit [him] best in the company," and "to think of a position that would work based on [his] skill set." ECF 1 at 5. Plaintiff asked her why a Regional Manager had been hired, and why he was not considered for the position, given his past inquiries and his strong job performance. *Id*. Orlaskey responded that plaintiff was "not ready," listing as examples that he had "failed to ask her about accepting unemployment as considerable income" and he "was not proactive in bringing concerns to her such as lease expiration management." *Id*. Plaintiff "corrected her . . . ." *Id*. Orlaskey also maintained that, in fact, Weyant "was not hired as Regional Manager," and "her title was not assigned to her" until the biographies and pictures were "due for the presentation" mentioned above. *Id*. at 6.

The day after the call, on June 2, 2020, plaintiff emailed Orlaskey with thoughts on a "training role" he could assume, and his suggestion for a job description. *Id*. The next day, Orlaskey responded with requests for additional information, to which plaintiff responded with a clarification question. *Id*. Plaintiff asserts he received no response, but also alleges he spoke with Orlaskey on June 5, 2020, at which point she advised that she wanted plaintiff to "focus" on areas he viewed as "opportunities for the company and ways to implement them." *Id*. In response, on June 9, 2020, plaintiff sent Orlaskey a revised job proposal. *Id*. And, on June 18, 2020, Orlaskey emailed plaintiff to ask for a list of his "current job responsibilities and projects." *Id*.

Otherwise, plaintiff did not hear back from Orlaskey until June 22, 2020, when she talked to him after the resignation of Signature's "Sales/Marketing Manager," who appears to have been subordinate to plaintiff. *Id*. Orlaskey informed plaintiff that Signature would be outsourcing its marketing; that the administrative duties of the former Sales/Marketing Manager would be

absorbed by Stumpf; that Stumpf would also take over various other duties from plaintiff, including "systems management;" and that plaintiff would be "moving into training."  ECF 1 at 6.

Levere sent a follow up email to Orlaskey on June 23, 2020, inquiring, among other things, as to his role, his title, and when he would receive the salary increase that he had been promised. *Id*.  After receiving no response, he sent another email on June 26, 2020, containing an update regarding his training of Stumpf and several training-related questions.  *Id*.  He also asked if he was now "managing systems again," because, according to plaintiff, "no one else was doing it." *Id*.  Again, he received no response.  *Id*.

During this period, plaintiff began to wonder why he was not included on any corporate calls, and did not know "what was going on."  *Id*.  Orlaskey told him that there had not been any corporate calls, but "it just so happens that they talk daily and make decisions that way but it's not an actual planned call."  *Id*.  The date of this interaction is unclear.  However, plaintiff states that he did not have any interactions with Orlaskey between June 22, 2020, and July 22, 2020, when he asked to take a personal day.  *Id*.

Then, on July 28, 2020, plaintiff received an email from Orlaskey, asking him "why a system called Slope Jet was not being used by the properties per the Property Managers."  *Id*.  No details are provided regarding Slope Jet, but from the context it appears to be an electronic system used for property management. In reply, Levere informed Orlaskey that "emails were sent offering training and support" regarding Slope Jet, "if needed."  *Id*.  He also noted that Orlaskey "specifically told" him that she and Weyant "would be managing the system with the teams," and that all Orlaskey had asked of plaintiff regarding Slope Jet was to provide them with "login information," which he had done.  *Id*. at 6-7.

Within twenty-four hours, an email was sent to all Signature "Property Managers," and all "corporate staff," except for plaintiff.  ECF 1 at 7.  This email informed recipients that their bonuses would not be "paid in full," for failure to use the Slope Jet system as directed, even though plaintiff had stated that, with the exception of one property, all employees had "received all necessary training and support" regarding the system.  *Id*.  Plaintiff alleges that, although the contents of the email were true, "it created a very tense environment when communicating with property managers."  Plaintiff implies that the email essentially blamed him for the lack of bonuses.

Plaintiff asserts that, after finding out what happened from Orlaskey, "a few hostile conversations" with managers, and "replaying" the events of the preceding month, he concluded that he "had to file a grievance."  *Id*.  He also alleges that Human Resources at Signature reported to Orlaskey, so he hesitated to do so.  *Id*.  Nevertheless, he filed a "formal grievance with HR and ownership" at 4:50 p.m. on August 3, 2020.  *Id*.[6]  The contents of this grievance have not been alleged or provided.

At 5:01 p.m. on the same day, some ten minutes after plaintiff filed the grievance, Orlaskey emailed plaintiff regarding a report that she had requested in June, asking plaintiff to submit the report by 10 a.m. the next day.  *Id*.  Plaintiff forwarded the relevant information to Orlaskey, and they had "another unpleasant exchange."  *Id*.

Then, on August 4, 2020, plaintiff was "terminated for performance."  *Id*.  He alleges that, unlike other "corporate staff members," he was not offered a severance package.  *Id*.  He had an exit interview with "ownership," and asked that "he [*i.e.*, ownership] look into [plaintiff's] claims but nothing has happened."  *Id*.

---

[6] "Ownership" is not identified.

To summarize, plaintiff describes his experience at Signature "horrific." ECF 1 at 7. He alleges that Orlaskey "wanted a certain demographic in the office," and that that he "didn't fit." *Id*.[7] Levere also maintains that he worked hard and usually received praise, rather than counseling regarding performance, whereas Weyant and Stumpf did not have "industry experience." *Id*. However, he alleges, as "young white women," Weyant and Stumpf "fit the descriptions of what Erika Orlaskey was looking for in her corporate team." *Id*. He also states: "I feel that as a black male within the corporate team, I was not paid as I should have been paid in respect to my white Director counterparts which I know is true in comparison to what the Director of Operations was making when on the team." *Id*.

Although the Complaint explicitly alleges that plaintiff is "black" and Weyant and Stumpf are white, it does not explicitly state the race of Orlaskey, Katz, McGowan, or Norton. *Id*. The Complaint generically refers to "white Director counterparts" without identifying anyone in particular. *Id*. The Charge also describes plaintiff as "one of two African American employees that started with the company," but does not identify the other person. ECF 1-3 at 1.

Plaintiff subsequently filed his Charge with the EEOC. *Id*. at 1-2. The Complaint alleges that the Charge was filed on January 26, 2021. ECF 1 at 9. However, plaintiff's signature on the Charge itself is dated April 23, 2021. ECF 1-3 at 1. In the Charge, plaintiff alleges discrimination based on race with respect to "discharge, assignment, and wages," as well as retaliation. *Id*. at 1-2. The Charge labels the discrimination as occurring between December 31, 2019, and August 8, 2020, but plaintiff also checked the "Continuing Action" box. ECF 1-3 at 1.

---

[7] In this regard, Levere also observed that when he first joined Signature, there was "a large Jewish presence in the corporate office." ECF 1 at 7. Yet, he claims that within his first 90 days at the company, "most of them were gone" as well. *Id.*

The EEOC's Right-to-Sue Notice is dated April 30, 2021.  ECF 1-3 at 3.  Plaintiff alleges that he received the Right-to-Sue Notice on the same day.  ECF 1 at 9.  The Right-to-Sue Notice indicated that the EEOC would not proceed with the investigation, but made no finding as to the merits of the claim.  ECF 1-3 at 3.  The Right-to-Sue Notice contained prominent information regarding the ninety-day requirement to file suit under Title VII, and the statute of limitations under the Equal Pay Act.  *Id*. at 3-4.

On July 30, 2021, plaintiff filed suit.  *See* ECF 1.  This date is ninety-one days after plaintiff's receipt of the Right-to-Sue Notice.  *See id*. at 9.  Plaintiff does not address this potential timeliness issue in the Complaint.  After Signature raised the issue in the Motion (*see* ECF 13-1 at 5-6), plaintiff contends in the Opposition that he "attempted to file on July 29, 2021 and pay by credit card but was told the court's payment system was not accepting credit or debit payments and the only payment type accepted was cash."  ECF 18 at 1.  He returned the next day to file and pay cash, and insists that if the Court's "system was active, this lawsuit would have been filed timely."  *Id*. at 3.  He asks for "the mercy of the court."  *Id*. at 1, 3.

For his Complaint, plaintiff used the Court's template, "Complaint for Employment Discrimination", along with a narrative of events, as recounted.  *See* ECF 1.  In Section II of the form complaint, called "Basis for Jurisdiction," plaintiff checked the box next to Title VII, and also noted the Equal Pay Act.  *Id*. at 3.  In Section III(A), asking the claimant to indicate "the discriminatory conduct of which [he] complain[s]," plaintiff checked the boxes for "Failure to promote me," "Unequal terms and conditions of my employment," and "Other acts."  *Id*. at 8.  Next to "Other acts," he wrote: "Unequal pay as white counterparts in Director positions."  *Id*.  Notably, plaintiff did *not* check the boxes in this section for "Retaliation" or "Termination of my employment."  *Id*. at 8.

9

In Section III(D) of the form, stating "Defendant(s) discriminated against me based on my . . . .", Levere checked "race," explaining: "I was denied a position; paid less in position." ECF 1 at 8.  Although plaintiff did not check the box in this section for "gender/sex," he wrote in the space next to that box: "I was paid less than female Directors." *Id.*

In the section of the form titled "Relief," plaintiff seeks $28,846.20 in wages, stating: "Salary difference of Directors vs my salary."   He also seeks $100,000 in punitive damages, stating: "Seeking damages for the stress and uncertainty of my livelihood in the midst of pandemic when I performed my job; for the inability to do my job and have staff lose faith in my abilities; and for the penalty of discrimination and unequal pay practices in hopes that this habit will finally end." *Id.* at 11.

Additional facts are included in the Discussion, *infra*.

## II.  Standards of Review

### A. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Nadendla*, 24 F.4th at 304-05; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of

action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In resolving a Rule 12(b)(6) motion, the question for the court is whether the plaintiff has stated a plausible claim for relief. *Twombly*, 550 U.S. at 570. At the motion to dismiss stage, however, a plaintiff need not establish a prima facie case of discrimination.

In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)] . . . is an evidentiary standard, not a pleading requirement." Further, the Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to

dismiss." *Swierkiewicz*, 534 U.S. at 511.  Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ."  *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, 557 U.S. 1138 (2016).

However, as the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544.  *See Littlejohn v. Cty. of New York*, 795 F.3d 297, 307 (2d Cir. 2015).  On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent."  *Id.* at 309.  On the other hand, in *Twombly* the Court said that a plaintiff must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ."  *Iqbal*, 556 U.S. at 684.

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]"  *See Swaso v. Onslow Cty. Bd. of Educ.*, 698 Fed. App'x 745, 747-48 (4th Cir. 2017) ("While a plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." (internal citations omitted)); *see also Holloway v. Maryland*, 32  F.4th 293, 298-99 (4th Cir. 2022); *McCleary*, 780 F.3d at 584; *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of*

14

*Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

And, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines,* 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods*, 855 F.3d at 642; *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation

omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Plaintiff submitted with the suit his EEOC Charge and Right-to-Sue Notice. *See* ECF 1-3. Because these documents were included with the Complaint, I may consider them. *See also Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021) ("In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions.").

In sum, at the motion to dismiss stage the question "is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 626 F.3d at 190). Notably, a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of his opposition briefing. *See, e.g.*, *De Simone v. VSL Pharmaceuticals*, ___ F.4th ___, 2022 WL 2036293, at *7 (4th Cir. June 7, 2022) (new arguments cannot generally be raised in a reply brief); *Henderson v. City of Roanoke*, ___ F. App'x ___, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o

16

litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-3058, 2016 WL 3570274 at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not alleged in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc.*, 770 F. Supp. at 1068 ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc.*, 745 F.2d 1101 at 1107).

## B. Pro Se Status

As noted, plaintiff is self-represented. Thus, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 Fed. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 Fed. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the Court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of*

*Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 Fed. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).  As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett*, 775 F.2d at 1278.

In short, "the leeway extended to a *pro se* plaintiff must be tempered to require the plaintiff to comply with the Federal Rules of Civil Procedure, including the pleading requirements of Rule 8."  *Adam v. Wells Fargo Bank, N.A.*, JFM-09-3287, 2010 WL 3001160, at *3 (D. Md. July 28, 2010).  The Court "'cannot construct the plaintiff's legal arguments for him.'"  *Jackson v. Warning*, PJM-15-1233, 2016 WL 7228866, at *5 (D. Md. Dec. 13, 2016) (internal citations omitted).

A complaint that "'fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief' constitutes a 'shotgun pleading.'"  *Id*. at *4 (quoting *SunTrust Mortgage, Inc. v. First Residential Mortgage Servs. Corp*., No. 3:12CV162, 2012 WL 7062086, at *7 (E.D. Va. Sept. 11, 2012), *report and recommendation adopted*, No. 3:12CV162, 2013 WL 505828 (E.D. Va. Feb. 8, 2013)) (alteration in *Jackson*).  "[P]leadings of this sort fail to apprise the opposing party of the particular claims against it (and the potential extent of its liability); they also water down the rights of parties to have valid claims

litigated efficiently and waste scarce judicial resources." *Jackson*, 2016 WL 7228866, at *4 (cleaned up).

### III. Discussion

### A. Title VII Claims

Plaintiff has brought claims under both Title VII and the Equal Pay Act.  ECF 1 at 3.  The precise nature of his Title VII claim is not always clear from the Complaint.  Based upon the boxes that plaintiff has checked in the Complaint, he appears to allege failure to promote on the basis of race, and unequal terms and conditions of employment, specifically unequal pay, on the basis of race and sex.  ECF 1 at 8.  However, Levere's factual narrative alleges a wide variety of conduct. *See id*. at 4-7.  And, in his Charge, plaintiff alleged race discrimination and termination in retaliation for filing a grievance.  ECF 1-3 at 1.

Regardless, the Court may evaluate these claims only if plaintiff filed suit in a timely fashion.  I turn to that issue.

### 1. Timeliness

Title VII, on which most of plaintiff's claims are founded, requires a plaintiff to file suit within 90 days of receipt of a right-to-sue notice from the EEOC.  *Se*e 42 U.S.C. § 2000e-5. Ordinarily, the 90-day period begins to run on the date that a claimant receives the notice.  *See Davis v. Va. Commonwealth Univ*., 180 F.3d 626, 628 (4th Cir. 1999); *Harvey v. City of New Police Dep't*, 813 F.2d 652, 653 (4th Cir. 1987); *Strothers v. City of Laurel, Md*., 118 F. Supp. 3d 852, 860 (D. Md. 2015).  "A claimant who fails to file a complaint within the ninety-day statutory time period mandated by Title VII generally forfeits his right to pursue his claims." *Mann v. Standard Motor Prod., Inc*., 532 Fed. App'x 417, 418 (4th Cir. 2013) (per curiam).

"The 90-day filing requirement is 'not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (*quoting Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 393 (1982)); *see Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (finding Title VII plaintiff's failure to file suit within 90 days did not warrant equitable tolling); *Angles v. Dollar Tree Stores*, 494 Fed. App'x 326, 332-33 (4th Cir. 2012) (affirming that equitable tolling was not appropriate in a particular Title VII case, but not contesting that equitable tolling was available as a general matter); *Crabill v. Charlotte Mecklenburg Bd. of Educ*., 423 Fed. App'x 314, 321 (4th Cir. 2011) (affirming application of equitable tolling to statute with 90-day filing requirement similar to that of Title VII); *see also Fort Bend Cty v. Davis*, ___ U.S. ___, 139 S. Ct. 1843, 1850-52 (2019) (holding that Title VII's charge-filing requirement is not jurisdictional).

Equitable tolling is a rare remedy that "allow[s] for exceptions to the strict enforcement of deadlines" and "restore[s] a claimant's right to review even though she otherwise would be time-barred." *Gayle v. United Parcel Serv., Inc*., 401 F.3d 222, 226 (4th Cir. 2005). A litigant is entitled to equitable tolling if: (1) he "'pursu[ed] his rights diligently,'" and (2) "'some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (*quoting Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see Edmonson v. Eagle National Bank*, 922 F.3d 535, 548 (4th Cir. 2019); *Battle v. Ledford*, 912 F.3d 708, 718 (4th Cir. 2019). But, as the Fourth Circuit has stated, equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct— it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (*quoting Harris v.*

*Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)); *see Irwin v. Dep't of Veteran's Affairs*, 498 U.S. 89, 96 (1990) (noting that the doctrine of equitable tolling is to be applied "sparingly"); *Hutchinson*, 209 F.3d at 330 (noting that equitable tolling "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes").

Courts in this Circuit generally apply equitable tolling in a narrow set of situations, including: (1) "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *Gayle*, 401 F.3d at 226 (internal quotation marks omitted); (2) "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the limitations period," *id*. (internal quotation marks omitted); or (3) where "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Hutchinson*, 209 F.3d at 330. "In contrast, equitable tolling is not appropriate in cases where 'the claimant failed to exercise due diligence in preserving his legal rights.'" *Angles*, 494 Fed. App'x at 332 (quoting *Irwin*, 498 U.S. at 96).

In the Fourth Circuit, the "settled general rule" is that "the burden of proving an affirmative defense is on the party asserting it." *McNeill v. Polk*, 476 F.3d 206, 220 n.3 (4th Cir. 2007). However, a "plaintiff bears the burden of establishing the timeliness of the filing of her complaint whe[n] it is contested by the defendant." *Cepada v. Board of Education of Baltimore County*, WDQ-10-0537, 2010 WL 3824221, at *3 (D. Md. Sept. 27, 2010); *see also Darden v. Cardinal Travel Center*, 493 F. Supp. 2d 773, 776 (W.D. Va. 2007).

Judges in this district have reiterated that a plaintiff's pro se status does not, on its own, trigger equitable tolling. In *Clark v. Saval*, DLB-19-3519, 2020 WL 7640819, at *8 (D. Md. Dec. 23, 2020), the court explained:

> "The fact that a plaintiff is self-represented is not an independent ground for equitable tolling, since a plaintiff does not need an attorney to file a lawsuit in

federal court." *Deabreu v. United Parcel Serv., Inc*., TDC-18-1433, 2018 WL 6329316, at *5 (D. Md. Dec. 3, 2018) . . . . Indeed, "[c]ourts strictly enforce the ninety day filing requirement, even if the plaintiff is *pro se*." *Moulden v. Tangherlini*, RDB-14-3506, 2015 WL 8757609, at *2 (D. Md. Dec. 15, 2015).

*See also Newman v. Maryland Oncology Hematology, P.A*., SAG-19-3667, 2020 WL 6044296, at *1 (D. Md. Oct. 9, 2020) ("Given the uncontroverted evidence that [the self-represented] Plaintiff was made aware of the correct filing deadline, there is simply no basis for equitable tolling . . . .").

The Fourth Circuit has ruled that filing only one day after the 90-day deadline may be grounds for dismissal, even where the plaintiff was self-represented. *See Harvey*, 813 F.2d 652 (dismissing suit because it was filed one day late and there were no grounds for equitable tolling, and noting that the pro se plaintiff had 84 days to file suit after learning of the receipt of the right-to-sue notice from his wife); *see also Nguyen v. Inova Alexandria Hosp*., 187 F.3d 630, 999 WL 556446, at *4 (4th Cir. 1999) (per curiam, unpublished) (concluding that the pro se plaintiff "had ample opportunity to file a complaint once she was in actual receipt of the EEOC letter," which was ten days after the 90-day limitations clock began to run); *Watts-Means v. Prince George's Fam. Crisis Ctr*., 7 F.3d 40, 42 (4th Cir. 1993) (reasoning that equitable tolling was inapplicable where the plaintiff retrieved the right-to-sue notice from the post office five days after its arrival, thus leaving him 85 days to file suit); *Dixon v. Digital Equip. Corp*., 976 F.2d 725, 1992 WL 245867 (4th Cir. 1992) (per curiam, unpublished) (dismissing suit and rejecting equitable tolling where pro se plaintiff filed suit one day late).

Plaintiff alleges in the Complaint that he received his Right-to-Sue Notice on April 30, 2021. ECF 1 at 9.[8]  And, he did not file suit until July 30, 2021—ninety-one days later. *See* ECF

---

[8] I note that this is the date that appears on the Right-to-Sue Notice. *See* ECF 1-3 at 3. Thus, plaintiff alleges that he received the Right-to-Sue Notice on the same date that it was issued. As unlikely as that may be, I defer to plaintiff's alleged facts.

1.  In his Opposition, plaintiff does not dispute that he filed his suit one day after the ninety-day deadline.  *See* ECF 18 at 1, 3.  Thus, unless plaintiff can successfully invoke a doctrine such as equitable tolling, his Title VII claims are plainly untimely.

The Complaint does not allege any facts relevant to equitable tolling.  However, in his Opposition, plaintiff advances what is, in essence, an equitable tolling argument, although he does not use that term.  In particular, he asserts: "I attempted to file on July 29, 2021 and pay by credit card but was told the court's payment system was not accepting credit or debit card payments and the only payment type accepted was cash.  I returned on July 30, 2021 to file and paid cash; I would ask for the mercy of the court."  *Id*. at 1.  And, later, he states: "I would ask for the mercy of the court regarding [the ninety-day filing requirement] as the court's payment system was down during the time to file only allowing cash payment for filing fees.  If the system was active, this lawsuit would have been filed timely."  *Id*. at 3.  He includes no documentation to support his assertion.

The entirety of plaintiff's explanation of the circumstances that prevented him from filing suit on July 29, 2021, is contained in the Opposition, consisting of the few sentences quoted above.  There is no suggestion that Signature's conduct contributed to the delay.

Plaintiff provides only a vague assertion that the Court's credit card payment system was not functioning at the time he tried to file suit, requiring him to return the next day with cash.  He provides no receipts or documentation that might support his claim, such as an Affidavit or other evidence that he went to the courthouse on July 29, 2021.  Moreover, although plaintiff received the Right-To-Sue notice on April 30, 2021 (ECF 1 at 9), he does not provide any explanation as to why he waited until the ninetieth day of the ninety-day filing period to file suit.  *See Kellum v. Comm'r of Social Security*, 295 Fed. App'x 47, 50 (6th Cir. 2008) (rejecting the application of

equitable tolling when plaintiff's failure to timely file was due, in part, to "his decision to wait until the last possible day to file his complaint," and describing the case as "yet another 'classic reminder of the risks that applicants take for no apparent reason by waiting until the very end of a filing period to initiate their lawsuits'") (internal citation omitted).

Furthermore, on October 22, 2020, Chief Judge James K. Bredar issued an Order providing that "cash will no longer be accepted as payment by the Clerk in this District," due to staffing shortages and health risks occasioned by the COVID-19 pandemic.  *See* Order, *In re: COVID-19 Pandemic    Procedures*,    Misc.    No.    20-146    (Oct.    22,    2020), https://www.mdd.uscourts.gov/sites/mdd/files/COVID-19-Order26-Cash.pdf.    Moreover,    the Order specifies: "All fees remain payable by check, money order, or credit card."  *Id*.  This Order was issued approximately nine months before plaintiff filed suit, and has not been rescinded. Therefore, it suggests that plaintiff could not have paid by cash at the relevant time.

Plaintiff offers no information that might help reconcile his account with the policy articulated by this Order.  For example, he does not indicate whether the Clerk gave him a receipt for his cash payment.  And, he provides no explanation as to why, even if he could not pay by credit card and had to return the next day to pay by cash, he could not have paid by check when he first went to file on July 29, 2021, as was also permitted under this Order.  Based on the limited information provided, it is difficult to conclude that plaintiff was genuinely prevented from filing within the ninety-day period.

However, if an error in the Court's payment system genuinely prevented plaintiff from filing suit on July 29, 2021, then it is possible that this could constitute an "extraordinary circumstance[] beyond plaintiffs' control [that] made it impossible to file the claims on time." *Hutchinson*, 209 F.3d at 330.  I am not aware of any case precisely on point for this circumstance.

However, other courts have concluded that equitable tolling was appropriate when, for example, an error with the Court's electronic filing system prevented timely filing. *See, e.g.*, *McMillan v. Colvin*, No. 2:16-cv-313, 2017 WL 1903109, at *2 (D.N.J. May 8, 2017) (applying equitable tolling when complaint was filed and filing fee charged, but complaint was never recorded on the court's docket); *Oliveras v. Colvin*, No. 15-cv-8431, 2016 WL 2757974, at *2-3 (D.N.J. May 12, 2016) (applying equitable tolling due to error in CM/ECF system); *Gilliam v. Verizon Pennsylvania, Inc.*, Civ. No. 13-1557, 2014 WL 901296, at *5-7 (W.D. Pa. Mar. 7, 2014) (applying equitable tolling when CM/ECF system charged filing fee but did not accept complaint, without presenting any indication complaint had not been accepted).

On the other hand, some cases point to a less generous approach. *See, e.g.*, *In re Ray*, 620 B.R. 418, 419 (Bankr. M.D. Ga. 2020) (stating that "technical issues with the online filing system is not adequate grounds for equitable relief," given availability of paper filing); *Towner v. Astrue*, No. C10-0091, 2011 WL 3875425, at *7 (N.D. Iowa Aug. 31, 2011) (noting that "miscommunication between [plaintiff's] counsel and the clerk's office, and unfamiliarity on the part of [plaintiff's] counsel with electronic filing, are not extraordinary circumstances entitling [plaintiff] to a tolling of the limitations period"); *Johnson v. Astrue*, No. 3:09-CV-46, 2010 WL 2365527, at *3-4 (N.D. W. Va. June 8, 2010) (equitable filing not appropriate when counsel paid filing fee, filed civil cover sheet and first page of complaint, and received "notice of electronic filing," but did not file complete complaint until after deadline due to unfamiliarity with electronic filing system).

As noted, plaintiff has the burden, once the issue is raised by defendant, to establish timeliness. *See Cepada*, 2010 WL 3824221, at *3. And, equitable tolling is a rare remedy that is only available to plaintiffs who have pursued their rights diligently. *See, e.g.*, *Menominee Indian*

*Tribe of Wis.*, 577 U.S. at 256; *Irwin*, 498 U.S. at 96; *Angles*, 494 Fed. App'x at 332; *Rouse*, 339 F.3d at 246.   Given this high standard, and the paucity of information provided by plaintiff, I conclude that Levere has not met his burden to justify equitable tolling on the basis of the information before the Court.

However, I also recognize that Levere is proceeding pro se, and that it is possible that, by alleging additional information of the sort discussed above, plaintiff could provide adequate grounds for equitable tolling.   Accordingly, I will grant plaintiff leave to file an Amended Complaint that addresses the issue of equitable tolling in more detail.   *See, e.g.*, *Taylor v. Computer Sciences Corp.*, No. 1:20-cv-01848-NLH, 2022 WL 2046887, at *1 (D.N.J. June 6, 2022) (noting that court had previously dismissed complaint without prejudice, and with leave to amend "to provide sufficient facts and arguments for why this Court should equitably toll" the limitations period); *Bearden v. Alameda Cty.*, No. C 18-02495 JSW, 2019 WL 13067382, at *1 (N.D. Cal. July 2, 2019) (noting plaintiff "was granted leave to amend and was given explicit instructions on what the Court would consider in adjudicating whether equitable tolling would be appropriate in these circumstances"); *Bank of New York v. Foothills at MacDonald Ranch Master Ass'n*, 329 F. Supp. 3d 1221, 1230 (D. Nev. 2018) (granting motion to dismiss "without prejudice to [plaintiff] amending to add facts that would make plausible the potential for waiver, estoppel, or equitable tolling"); *Nahrebeski v. Cincinnati Milacron Marketing Co.*, 835 F. Supp. 1130, 1133 (W.D. Mo. 1993) ("The court further finds that plaintiff should be granted leave to amend his complaint to plead the facts that justify the application of equitable tolling in this case.").

## 2.   Failure to State a Claim

In addition to the timeliness argument, Signature urges the Court to dismiss the suit, based on plaintiff's failure to state a Title VII claim.   *See* ECF 13-1 at 6-11.   As noted, I have dismissed

26

the Title VII claims, with leave to amend.  In some circumstances, it might be sensible to consider, in the alternative, whether the plaintiff has stated a claim.  But here, it would be a poor use of the Court's time.  This is because the content of the Opposition suggests that plaintiff has attempted to amplify the facts, beyond those actually contained in his Complaint, and he also may seek to add claims.  Thus, even if the Title VII claims in the Complaint are deficient, the Amended Complaint filed by plaintiff could be substantially different from what is in the Complaint.  And, in that circumstance, it would serve no purpose to address the claims in the Complaint.

In particular, plaintiff's Opposition is replete with factual assertions that he did not allege in his Complaint.  And, many of these assertions appear to be of some significance to plaintiff's claims.  A plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint." *Zachair Ltd.*, 965 F. Supp. at 748 n.4; *see also Mylan Labs., Inc.*, 770 F. Supp. at 1068 ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc.*, 745 F.2d at 1107). But, plaintiff could certainly include these new factual assertions in an Amended Complaint, which would impact the analysis.

For example, in the Opposition plaintiff states that "a black [Signature] employee was referred to as 'these people' by white corporate employees."  The Opposition also includes assertions regarding salaries; severance packages; plaintiff's performance while at Signature; and other Signature employees; which could also be relevant to the viability of the claims.  *See* ECF 18 at 1-2, 4-7.

The discrepancy between the content of the Complaint, and what the Opposition suggests that plaintiff intended when drafting the Complaint, extends beyond factual allegations to encompass plaintiff's overall claims.  For example, the Complaint alleges that one day after

plaintiff filed a "grievance" with Human Resources, he was terminated. ECF 1 at 7. Although the Complaint does not describe the content of this "grievance," if the grievance opposed an allegedly discriminatory practice, then plaintiff may state a claim for retaliation under Title VII. *See Netter v. Barnes*, 908 F.3d 932, 937-38 (4th Cir. 2018); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir.1981).

Indeed, plaintiff asserted a retaliation claim in his Charge. *See* ECF 1-3 at 1-2. In his Complaint, however, plaintiff did not check the box to indicate the assertion of a retaliation claim. ECF 1 at 8. Understandably, Signature construed the Complaint as not lodging a retaliation claim, and did not argue against such a claim in the Motion. *See* ECF 13-1 at 2 n.1. But, in the Opposition, plaintiff asserts that he did, indeed, intend to bring a retaliation claim. ECF 18 at 2. Similarly, plaintiff did not check the box for a termination claim in the Complaint. ECF 1 at 8. Yet, he also appears to state in the Opposition that he is bringing such a claim. ECF 18 at 1-2.

A complaint must "apprise the opposing party of the particular claims against it" and "'articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading.'" *Jackson*, 2016 WL 722866, at *4 (quoting *SunTrust Mortgage, Inc.*, 2012 WL 7062086, at *7). If plaintiff files an Amended Complaint, he should ensure that he includes in the Complaint all facts he wishes to allege, and specify with precision all of the claims he intends to bring. And, because of the potential differences between the Complaint and an Amended Complaint, it makes little sense for me to evaluate whether the Complaint states a Title VII claim.

### B. Equal Pay Act Claim

In the Complaint, plaintiff also brings a claim under the Equal Pay Act, alleging that he was paid less than his female counterparts in "Director" positions. ECF 1 at 8; *see id*. at 3, 4-5, 7.

The Equal Pay Act has a distinct statute of limitations scheme as compared to Title VII. "The Equal Pay Act has a two-year statute of limitations unless the plaintiff claims that the defendant's conduct was willful, in which case a three-year period applies." *Becker v. Gannett Satellite Info. Network, Inc.*, 10 Fed. App'x 135, 138 (4th Cir. 2001) (per curiam) (citing 29 U.S.C. § 255(a)); *see also, e.g.*, *Maron v. Va. Polytechnic Inst. and State Univ.*, 508 Fed. App'x 226, 233 (4th Cir. 2013) (per curiam); *Cohen v. Md. Dep't of Human Resources*, 933 F. Supp. 2d 735, 746 (D. Md. 2013). Plaintiff's Charge states that the discrimination began on December 31, 2019. ECF 1-3 at 4. And, the unequal pay alleged by plaintiff began, at the earliest, in November 2019. ECF 1 at 4-5. These dates are within two years of July 30, 2021, when plaintiff filed suit. *See* ECF 1. Thus, there is no statute of limitations issue for this claim. And, Signature does not argue that there is.

However, Signature argues that plaintiff's claim is barred because the Charge does not allege any "gender-based discriminatory conduct" by defendant. ECF 13-1 at 12; ECF 19 at 6 n.2. However, "the Equal Pay Act, unlike Title VII, has no requirement of filing administrative complaints and awaiting administrative conciliation efforts." *Washington County v. Gunther*, 452 U.S. 161, 175 n.14 (1981); *see also Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 640 (2007) (noting that "the EPA does not require the filing of a charge with the EEOC"), *overruled on other grounds by statute*; *Nealon v. Stone*, 958 F.2d 584, 593 (4th Cir. 1992) (noting that plaintiff's "initial filing of her EPA claim with the EEOC was not required by law").

The case cited by Signature on this issue, *Robinson v. Ctr. for Disease Control and Prevention*, L-07-2102, 2008 WL 8987439 (D. Md. Sept. 25, 2008), *aff'd*, 382 Fed. App'x 265 (4th Cir. 2010), is not to the contrary. In that case, the court looked to the content of plaintiff's EEOC charge to help evaluate whether plaintiff had alleged enough detail for his Equal Pay Act

claim to survive a motion to dismiss.  *Id.* *4.  However, the court never suggested that this claim should be dismissed because it was not administratively exhausted.  *Id.*  Accordingly, plaintiff's Equal Pay Act claim is not affected by the content of the Charge.

Therefore, I proceed to evaluate whether plaintiff has stated an Equal Pay Act claim.  The Equal Pay Act, 29 U.S.C. § 206(d), provides, in relevant part:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working condition . . . .

The Equal Pay Act "prohibits gender-based discrimination by employers resulting in unequal pay for equal work."  *U.S. E.E.O.C. v. Md. Insurance Admin.*, 879 F.3d 114, 120 (4th Cir. 2018).[9]  "A plaintiff establishes a prima facie case of discrimination under the [Equal Pay Act] by demonstrating that (1) the defendant-employer paid different wages to an employee of the opposite sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions."  *Id.*; accord *Spencer v. Va. State. Univ.*, 919 F.3d 199, 203 (4th Cir. 2019), *cert. denied*, ___ U.S. ___, 140 S. Ct. 381 (2019); *Maron*, 508 Fed. App'x at 232; *Cohen*, 933 F. Supp. 2d at 747; *Kramer v. Bd. of Educ. of Balt. Cty.*, 788 F. Supp. 2d 421, 428 (D. Md. 2011).  Notably, a "plaintiff need not prove that the employer acted with discriminatory intent to obtain a remedy under the statute."  *Md. Insurance Admin.*, 879 F.3d at 120.

---

[9] The law "is written in gender-neutral terms so that it is available to remedy discriminatory actions against both men and women." *Md. Insurance Admin.*, 879 F.3d at 120 n.5.

"Equality under the Act is a demanding threshold requirement.  It requires a comparator to have performed work 'virtually identical' (or the apparent synonym, 'substantially equal') to the plaintiff's in skill, effort, and responsibility.  Similarity of work is not enough; the Act explicitly distinguishes between the work itself (which must be 'equal') and the conditions of work (which need only be 'similar')."  *Spencer*, 919 F.3d at 203-04 (quoting *Wheatley v. Wicomico Cty.*, 390 F.3d 328, 332-33 (4th Cir. 2004)).  "In alleging this necessary equality, a plaintiff may not rely on broad generalizations at a high level of abstraction. . . . [The Fourth Circuit has] rejected [the claim] that jobs with the same title and only vaguely corresponding responsibilities can be considered equal."  *Spencer*, 919 F.3d at 204 (rejecting the argument that the common job title of "professor" was sufficient for a comparator); *see also Wheatley*, 390 F.3d at 332-34 (rejecting the use of "department director positions" as comparators, because although plaintiffs and male comparators were all department directors, the different departments performed "completely different functions," and directors involved widely varying skills and responsibilities).

"'The touchstone of the equal work analysis is whether the work is substantially equal.  If the jobs to be compared have a common core of tasks, i.e., significant portions of the two jobs are identical, the inquiry turns on whether the differing or additional tasks require greater skill or responsibility,'" which might justify a pay differential.  *Cohen*, 933 F. Supp. 2d at 747 (quoting *Hassman v. Valley Motors, Inc.*, 790 F. Supp. 564, 567 (D. Md. 1992)).  "While the [Equal Pay Act] does not demand that plaintiffs identify with specificity a single individual, plaintiffs cannot indiscriminately aim at all similarly-employed male counterparts collectively.  The Court must examine the specific skills, effort, and responsibilities required of each employee."  *Noel-Batiste v. Va. State Univ.*, No. 3:12cv00826-HEH, 2013 WL 499342, at *6 (E.D. Va. Feb. 7, 2013).

At the Rule 12(b)(6) stage, a plaintiff is not required to establish a prima facie Equal Pay Act claim, and need only plausibly allege an Equal Pay Act violation. *See, e.g.*, *Twombly*, 550 U.S. at 570; *Swierkiewicz*, 534 U.S. at 511, 15; *Bing*, 959 F.3d at 617; *Woods*, 855 F.3d at 648; *Brown v. Miller*, GLR-19-3156, 2020 WL 3184144, at *4 (D. Md. June 15, 2020); *Spencer v. Va. State Univ.*, 224 F. Supp. 3d 449, 456-57 (E.D. Va. 2016); *Kling v. Montgomery Cty.*, PWG-15-2866, 2016 WL 3940237, at *6-7 (D. Md. July 20, 2016); *Noel-Batiste*, 2013 WL 499342, at *5-6; *Kramer*, 788 F. Supp. 2d at 428-29.   Nevertheless, even at the Rule 12(b)(6) stage, plaintiff must plausibly allege "facts sufficient to show that the skills, effort, and responsibilities required of Plaintiff and [the comparator positions] are substantially equal."  *Noel-Batiste*, 2013 WL 499342, at *6; *see also Brown*, 2020 WL 3184144, at *4; *Spencer*, 224 F. Supp. at 456-57; *Kling*, 2016 WL 3940237, at *6-7; *Kramer*, 788 F. Supp. 2d at 428-29.

Applying these principles, I conclude that the Complaint fails to state an Equal Pay Act claim.  Plaintiff alleges that he was "paid less than female Directors."  ECF 1 at 8.  In particular, after Levere was promoted to Director of Marketing & Performance, his pay was increased to $65,000, whereas "the average salary for a Director was over $100k per year."  *Id*. at 5.  Plaintiff's pay was supposed to increase once Signature acquired South Pointe, but the Complaint implies that no salary increase ever occurred.  *Id*. at 4-6.

Plaintiff has plausibly alleged that employees of the opposite sex were paid more than he was paid.  But, the Complaint is devoid of any allegation as to substantially equal skill, effort, or responsibility between these jobs.  Indeed, besides the generic references to other directors quoted above, and a single reference to "the Director of Operations" (*id*. at 7), the Complaint does not actually name any other director position.  And, it does not allege the skills or responsibilities of

any other director position, nor make any comparison to plaintiff's position.  Nor does the Complaint itself identify any specific individual who held another director position.

Plaintiff's Charge, included with the Complaint, identifies Tiffany McGowan as the Director of Operations.  ECF 1-3 at 1.[10]  The Complaint also mentions McGowan, albeit without giving her title.  ECF 1 at 4-5.  However, the Complaint includes minimal discussion of the skills, effort, or responsibilities in regard to McGowan's position, much less any allegation of similarity to plaintiff's director position.[11]

The fact that plaintiff's position and his putative comparator positions all had the title of "director" is not a sufficient allegation, without more, of substantially equal skill, effort, and responsibility.  The Fourth Circuit has explicitly rejected the claim that a common job title is sufficient to make a valid comparison.  *See, e.g.*, *Spencer*, 919 F.3d at 204 (common job title of "professor" insufficient); *Wheatley*, 390 F.3d at 332-34 (common job title of "department director" insufficient).  Indeed, the job titles of the two directors identified in the Complaint—"Director of Operations" (McGowan) and "Director of Marketing & Performance" (plaintiff)—suggest differing roles and responsibilities.  And, much of the Complaint is devoted to alleging that plaintiff's responsibilities were systematically assigned away from him, beginning a few months after he was promoted to Director of Marketing & Performance.  *See* ECF 1 at 5-6.  If this reassignment occurred with discriminatory intent, it could provide a basis for a discrimination

---

[10] As noted, the Charge was submitted as an exhibit to the suit. I may consider the content of the Charge. *See, e.g.*, *Batkins v. CSX Transp., Inc.*, SAG-19-1541, 2019 WL 5064647, at *4 (D. Md. Oct. 9, 2019) ("Accordingly, I will consider the contents of [plaintiff's] EEOC Charge, and treat them as true, in adjudicating [defendant's] motion to dismiss."); *James v. Fed. Reserve Bank of N.Y.*, No. 01-CV-1106-RJD, 2005 WL 1889859, at *1 (E.D.N.Y. Aug. 8, 2005) ("The Court considers as true for present purposes the following allegations, which plaintiff . . . makes in the complaint and in EEOC charges.").

[11] The Complaint alleges McGowan was terminated in February 2020. ECF 1 at 5.

claim by plaintiff.  But, it tends to undermine the assertion that plaintiff's job involved substantially equal skill, effort, or responsibility compared to other director positions.

This conclusion is consistent with other decisions dismissing Equal Pay Act claims at the Rule 12(b)(6) stage.  *See, e.g.*, *Brown*, 2020 WL 3184144, at *4 (plaintiff "fails to offer any facts" suggesting that the comparator "positions required the same level of skill, effort, and responsibility as [plaintiff's] position"); *Spencer*, 224 F. Supp. at 457 (complaint filed by plaintiff, an "Associate Professor," "founders in its failure to identify with any degree of specificity the analogous 'skill, effort and responsibility' inherent in either [plaintiff's] job or the jobs of her putative comparators," some of whom had the same title); *Noel-Batiste*, 2013 WL 499342, at *6 ("Plaintiff has made no reference to the skills, effort, and responsibilities required of her as an 'Associate Professor' or to those of the male professors who she alleges receive a greater salary. . . . Since Plaintiff has failed to plead facts sufficient to show that the skills, effort, and responsibilities required of Plaintiff and the male professors are substantially equal, the Court finds that Plaintiff has failed to sufficiently allege an EPA violation.").

In his Opposition, plaintiff asserts additional facts relevant to his Equal Pay Act claim, including slightly greater detail as to job responsibilities, and a previously unmentioned female "Director of Acquisitions."  ECF 1 at 6-8.  But, as noted, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  *Mylan Labs., Inc.*, 770 F. Supp. at 1068 (quoting *Car Carriers, Inc.*, 745 F.2d at 1107).  Thus, these assertions may not be considered when evaluating whether plaintiff has stated an Equal Pay Act claim.

However, it is clear that the deficiencies in plaintiff's Equal Pay Act claim could be cured with additional factual assertions.  Therefore, as with plaintiff's Title VII claims, I will grant leave for plaintiff to file an Amended Complaint regarding his Equal Pay Act claim.

## IV.  Conclusion

For the reasons stated above, I shall grant the Motion, without prejudice.  I shall also grant plaintiff leave to file an Amended Complaint addressing the issues identified in this Memorandum Opinion, due within 28 days of the date of docketing of this Memorandum Opinion and the accompanying Order.  If plaintiff does not file an Amended Complaint within 28 days of the date of docketing of this Memorandum Opinion and the accompanying Order, I shall direct the Clerk to close the case.

An Order follows, consistent with this Memorandum Opinion.


Date:   June 14, 2022                            _____/s/_____

                                                Ellen L. Hollander
                                                United States District Judge